UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUPREME FOREST PRODUCTS, INC., *et al*., <br>          *Plaintiffs*, <br><br>          v. <br><br> MICHAEL KENNEDY *and* FERRELL WELCH, <br>          *Defendants*. | No. 3:16-cv-0054 (JAM) |

## ORDER RE DISCOVERY DISPUTE

This discovery dispute principally concerns the scope of the attorney-client privilege in the context of two clients who have filed separate lawsuits against the same employer but who otherwise have a common interest and are represented by a single attorney. For the reasons set forth below, I will sustain in part and overrule in part plaintiffs' objections to defendants' invocation of the privilege.

### BACKGROUND

Plaintiffs are a company (Supreme Forest Products, Inc.) and two of its employees (Martin Paganini and Mark Bellino) who filed suit in January 2016 against two former company employees (Michael Kennedy and Ferrell Welch), alleging that Kennedy and Welch conspired to secretly and unlawfully tape-record certain conversations that Kennedy had with Paganini and Bellino. The conversations with Paganini and Bellino occurred in March and April 2014, and the tape-recordings were ostensibly made for purposes of generating evidence to be used by Kennedy and Welch to make a claim against the company for its alleged violation of federal workplace safety laws. Indeed, Kennedy and Welch filed separate federal lawsuits in 2014

1

against the company, alleging that it wrongfully discharged them because they refused to drive the company's trucks in violation of federal transport safety regulations. *See Kennedy v. Supreme Forest Products, Inc.*, 3:14cv1851 (JAM) (D. Conn.); *Welch v. Supreme Forest Products, Inc.*, 3:14cv1852 (JAM) (D. Conn.).

The tape-recordings now at issue in this lawsuit came to light after they were disclosed during the course of pre-trial discovery in the prior lawsuits by Kennedy and Welch against the company. This disclosure prompted the company and Paganini and Bellino to file the instant lawsuit. Kennedy and Welch are represented as defendants in this current lawsuit by the same attorney, Michael Reilly, who brought the initial lawsuits on their behalf.

Now before me is a dispute about the scope of the attorney-client privilege for Kennedy and Welch. Faced with extensive document requests, interrogatories, and requests for production, Kennedy and Welch have invoked the attorney-client privilege in relation to certain meetings or communications that they jointly participated in with Attorney Reilly during the course of the prior litigation. According to their submissions, Kennedy and Welch both consulted with Attorney Reilly in early May 2014, and they then signed retainer agreements on May 5 and May 9, 2014. The principal issue is whether the attorney-client privilege should apply to the joint communications that occurred between Kennedy, Welch, and Attorney Reilly before the filing in 2016 of the current lawsuit against Kennedy and Welch.

## DISCUSSION

The parties do not dispute the basic elements of the attorney-client privilege: "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir.

2007); *see also Blumenthal v. Kimber Mfg., Inc.*, 265 Conn. 1, 9–10 (2003) (discussing purpose and scope of attorney-client privilege); RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 68 (elements of attorney-client privilege).[1]

Moreover, the attorney-client privilege may properly extend to communications that occur between an attorney in the presence of two or more clients that the attorney jointly represents. "If two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that otherwise qualifies as privileged . . . and relates to matters of common interest is privileged as against third persons, and any co-client may invoke the privilege, unless it has been waived by the client who made the communication." RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 75. As the commentary instructs, "the rule recognizes that it may be desirable to have multiple clients represented by the same lawyer," and "the scope of the co-client relationship is determined by the extent of the legal matter of common interest." *Id.*, cmts. (b) & (c); *see also Pagano v. Ippoliti*, 245 Conn. 640, 649–50 (1998) ("When two or more people consult an attorney together on a matter of joint interest . . . their communications [are] privileged as to the outside world."); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 362–63 (3d Cir. 2007) (discussing co-client privilege).

Here, it is clear to me that Kennedy and Welch share a common interest based on their highly similar employment claims brought against the same employer. They are for all practical purposes jointly represented by one attorney, and the fact that their attorney filed separate lawsuits rather than joining his two clients together in a single lawsuit does not dispel the application of the co-client privilege. If the clients share a common interest, the co-client rule

---

[1] Because the claims in this case involve state law, the scope of the attorney-client privilege is determined by Connecticut law. *See* Fed. R. Evid. 501; *Vessalico v. Costco Wholesale Warehouse*, 2016 WL 3892403, at *1 (E.D.N.Y. 2016).

requires joint representation, not necessarily joint litigation. As Judge Newman has observed, "whether the legal advice was focused on pending litigation or on developing a [non-litigation] patent program that would afford maximum protection, the [co-client] privilege should not be denied when the common interest is clear." *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 514 (D. Conn. 1976).

During the teleconference on this matter, plaintiffs argued that Kennedy and Welch could not assert this privilege because their legal interests must be identical, not merely similar. Courts have described multiple "version[s] of the 'common interest' doctrine." *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001). This doctrine "subsumes a number of principles that are sometimes characterized as separate rules and at other times conflated into a single axiom." *North River Ins. Co. v. Columbia Cas. Co.*, 1995 WL 5792, at *2 (S.D.N.Y. 1995). Plaintiffs appear to be referring to one version of the doctrine, sometimes called the "community of interest" doctrine, in which parties who are represented by *separate* counsel may claim the privilege when they are "engage[d] in a common legal enterprise." *Id.* at *3. In that circumstance, some courts have held that the parties' shared interest must "be identical, not similar," *ibid.*, although others have held that the parties' interests "need not be entirely congruent." *In re Velo Holdings Inc.*, 473 B.R. 509, 514 (Bankr. S.D.N.Y. 2012) (quoting RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 75, cmt. (e)).

This "community of interest" privilege, however, differs from the co-client privilege. *See In re Teleglobe*, 493 F.3d at 363–64. For the co-client privilege, it suffices for the clients to have a common interest, not necessarily interests that are identical in all respects. So long as their interests are common, co-clients who consult the same lawyer would reasonably expect that their communications with the lawyer to which they are mutually privy would be protected from

disclosure to third parties by the attorney-client privilege. The legitimate expectation of privilege is unmistakably higher in the co-client context than the broader community-of-interest context involving parties who are not represented by the same counsel.

In any event, Kennedy and Welch had nearly identical legal interests. They both sought legal representation to pursue what was essentially the same major claim—that Supreme Forest Products had violated federal law by retaliating against them when they resisted driving overweight vehicles. There were, of course, minor factual differences between their claims, but the gravamen of their complaint—Supreme Forest's alleged insistence on driving illegally loaded vehicles, and its alleged willingness to retaliate against drivers who didn't toe the line— was the same. Although Welch had an additional claim related to his post-termination health benefits, the fact that Welch had an additional interest in his suit does not vitiate his common interest with Kennedy. I therefore find that defendants' interests were sufficiently common for them to properly invoke the co-client attorney-client privilege.

Plaintiffs further contend that there is no evidence that Kennedy and Welch had a joint representation agreement with their counsel prior to when they were sued by plaintiffs in January 2016. But this argument ignores the course of dealing between defendants prior to January 2016 when they had both retained counsel within days of each other in May 2014 to represent them for purposes of the claims they eventually filed against Supreme Forest Products, Inc. Even if prior to January 2016 Kennedy and Welch did not have a formal written agreement of joint representation, it is clear to me that they would have justifiably expected their co-client communications with counsel to be protected by the privilege. As the commentary to the Restatement makes clear, the focus is on whether the respective co-clients "have expressly *or implkedly* agreed to common representation in which confidential information will be shared."

RESTATEMENT § 75, cmt. (c); *see also In re Teleglobe*, 493 F.3d at 363 ("While written agreements limiting the scope of a joint representation might be preferable, nothing requires this so long as the parties understand the limitations."). Accordingly, I conclude that Kennedy and Welch may properly assert the privilege as to communications that occurred in their mutual presence with counsel beginning as of May 9, 2014.[2]

Plaintiffs further contend that defendants may not assert the privilege as grounds to withhold facts or information solely by reason of such facts or information being the subject of a privileged communication. I agree. "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *see also In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992) ("[T]he cloak of the privilege simply protects the communication from discovery, the underlying information contained in the communication is not shielded from discovery.").

Accordingly, to the extent that any facts or information are known to either defendant without reference to their having been discussed in any privileged communication, then defendants shall fully respond to such discovery requests. For example, if an interrogatory can be answered without reliance on or reference to the occurrence of and content of a privileged communication, then defendants shall answer such interrogatory regardless of whether the interrogatory is directed at underlying factual matter that happened to be later discussed in a privileged communication. Only if disclosure of facts would unavoidably result in disclosure that the facts occurred or were learned in the context of a privileged communication may defendants assert the privilege as to the disclosure of such facts.

---

[2] Defendants have not asserted that the privilege extends before the retainer was signed on May 9, and so it is not necessary for me to consider whether prior communications should be protected.

Plaintiffs further contend that defendants may not assert the privilege as to any communications they had with one another *outside* the presence of counsel (or, presumably, communications to which counsel was not a party). I agree. Defendants have not responded to this argument, and therefore defendants have not carried their burden to sustain any claim of privilege with respect to such communications.

CONCLUSION

For the foregoing reasons, plaintiffs' objections to defendants' invocation of the attorney-client privilege are SUSTAINED in part and OVERRULED in part. The objections are SUSTAINED to the extent that plaintiffs seek disclosure of the content of communications that occurred between defendants and counsel from May 9, 2014, to the present, to the extent that such communications were otherwise made in confidence for the purpose of giving or receiving legal advice. The objections are OVERRULED to the extent that plaintiffs seek facts or information that can be revealed without disclosing that such facts occurred during or were discussed during a privileged communication. The objections are further OVERRULED to the extent that plaintiffs seek communications between the two defendants that occurred outside the presence of counsel or without simultaneous communication to or from counsel.

It is so ordered.

Dated at New Haven, Connecticut, this 12th day of January 2017.

 /s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge